**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 25 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CITY OF FORT MORGAN,

      Petitioner,

    v.

FEDERAL ENERGY REGULATORY
COMMISSION,

      Respondent.

---

K N WATTENBERG
TRANSMISSION LIMITED
LIABILITY COMPANY; LEPRINO
FOODS COMPANY AND EXCEL
CORPORATION, "Shippers";
COLORADO INTERSTATE GAS
COMPANY; PUBLIC SERVICE
COMPANY OF COLORADO;
PUBLIC UTILITIES COMMISSION
OF THE STATE OF COLORADO,

      Intervenors.

No. 98-9512

---

**APPEAL FROM ORDERS OF THE**
**FEDERAL ENERGY REGULATORY COMMISSION**
**(F.E.R.C. NO. CP97-256-000)**

---

Dudley P. Spiller, Gorsuch Kirgis, LLP, Denver, Colorado (Harry L. Pliskin, Gorsuch Kirgis, LLP, Denver, Colorado, and Eric C. Jorgenson, Fort Morgan City Attorney, Fort Morgan, Colorado, with him on the briefs), for Petitioner.

Laura J. Vallance (Douglas W. Smith, Jay L. Witkin, and Susan J. Court with her on the brief), Federal Energy Regulatory Commission, Washington, D.C., for Respondent.

John H. Burnes, Jr., Van Ness Feldman, PC, Washington, D.C. (T. J. Carroll, Assistant General Counsel, K N Wattenberg Transmission Limited Liability Company, Lakewood, Colorado, and John R. Webb, Holme Roberts & Owen, LLP, Denver, Colorado, with him on the brief), for Intervenors K N Wattenberg Transmission Limited Liability Company, Leprino Foods Company and Excel Corporation.

Robert I. White, Squire, Sanders & Dempsey, LLP, Washington, D.C. (Nancy A. White, Squire, Sanders & Dempsey, LLP, Washington, D.C., and James D. Albright, New Century Services, Inc., Denver, Colorado, with him on the briefs), for Intervenor Public Service Company of Colorado.

Gregory E. Sopkin, Assistant Attorney General (Gale A. Norton, Attorney General, Richard A. Westfall, Solicitor General, Linda L. Siderius, Deputy Attorney General, and Raymond L. Gifford, First Assistant Attorney General, with him on the brief), for Intervenor Colorado Public Utilities Commission.

---

Before **SEYMOUR** , Chief Judge, **ANDERSON** and **HENRY** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

The City of Fort Morgan, Colorado, petitions for review of an order and order on rehearing by the Federal Energy Regulatory Commission ("FERC"), authorizing K N Wattenberg Limited Liability Company ("KNW") to construct and operate a new natural gas line and related facilities. The orders assert FERC jurisdiction over the facilities under section 1(b) of the Natural Gas Act ("NGA"),

15 U.S.C. §§ 717–717z.  We grant the petition, reverse and remand to FERC for further proceedings.

## BACKGROUND

Fort Morgan is a home-rule municipality in Morgan County, Colorado. Fort Morgan's natural gas department provides transportation and local distribution of gas to customers within the City and adjacent areas.  The City's two largest natural gas customers have been Leprino Foods Company and Excel Corporation, both of which operate food processing plants in Fort Morgan.  Prior to the events giving rise to this appeal, Leprino and Excel purchased their natural gas supplies from third-party marketers.  The gas was then transported by Colorado Interstate Gas Company ("CIG") to Fort Morgan's local distribution system, which, in turn, delivered the gas to the Leprino and Excel plants. Together, Leprino and Excel accounted for 19% of the City's gas department revenues.

In 1995, Fort Morgan's City Council trebled the transportation rate for natural gas delivered by its natural gas department.  Leprino and Excel accordingly explored less expensive alternative sources for their natural gas requirements.  KNW is an interstate natural gas pipeline company.  KNW and Leprino and Excel agreed that KNW would supply Leprino and Excel with natural

gas by building a lateral gas pipeline from CIG's gas line directly to the Leprino and Excel plants.

On February 19, 1997, KNW filed with FERC a "Request Under Blanket Authorization" seeking authority to construct, install and operate a four-mile, 6.625 inch diameter pipeline; a one-mile, 4.5 inch pipeline; and related taps on the existing gas pipeline facilities of CIG in Morgan County. KNW's proposed pipeline would transport gas from CIG's pipeline directly to the Leprino and Excel plants, thereby bypassing Fort Morgan's local distribution system. As all parties agree, KNW's proposed new pipeline facilities (the subject of this appeal) are physically separate from the remainder of KNW's interstate pipeline facilities. [1]

On April 16, 1997, Fort Morgan intervened in the proceeding and filed a protest to KNW's request. The Public Service Company of Colorado ("PSCC"), [2]

---

[1]KNW's new facilities are 57 miles away from KNW's other gas facilities. Furthermore, KNW's existing facilities primarily transport large volumes of unprocessed or "wet" natural gas at high pressure to plants where the heavier hydrocarbons are extracted from the gas. They do not deliver gas directly to end users or local distributors, except for some delivery to the Public Service Company of Colorado. The new facilities at issue in this appeal, by contrast, transport gas at a much lower pressure, and are designed to deliver gas directly to the end users, Leprino and Excel. See Noblett Affidavit at ¶ VI, Pet'r's Opening Br. Addendum D.

[2]PSCC is a combination gas and electric utility. With respect to its natural gas operations, it is a local distribution company which provides retail sales, sales for resale and intrastate transportation services to residential, commercial and

(continued...)

-4-

CIG, Leprino and Excel all also intervened in the FERC proceedings. Fort Morgan asked FERC to reject KNW's request on the ground that the proposed facilities were exempt from FERC jurisdiction as local distribution facilities under section 1(b) of the NGA, 15 U.S.C. § 717(b), and as Hinshaw Amendment facilities under section 1(c) of the NGA, 15 U.S.C. § 717(c).[3] Alternatively, Fort Morgan argued the KNW proposal was not in the public convenience and necessity.

On November 4, 1997, FERC granted KNW's request. See K N Wattenberg Transmission Ltd., 81 F.E.R.C. ¶ 61,167 (1997). FERC held that KNW's proposed facilities were neither local distribution facilities nor Hinshaw Amendment facilities, and were therefore subject to FERC jurisdiction. Fort Morgan filed a Request for Rehearing and a Motion for Stay of the FERC Order. CIG and PSCC subsequently filed separate requests for rehearing as well.

On December 29, FERC granted rehearing to permit further consideration and, on April 11, 1998, issued an order denying all parties' requests for rehearing.

---

[2](...continued)
industrial customers in northern, central and western Colorado.

[3]Section 1(b) of the NGA, 15 U.S.C. § 717(b), specifically exempts "local distribution of natural gas" from federal regulation, and, as we explain more fully infra, the Hinshaw Amendment, contained in section 1(c) of the NGA, 15 U.S.C. § 717(c), "exempts from FERC regulation intrastate pipelines that operate exclusively in one State and with rates and services regulated by the State." General Motors Corp. v. Tracy, 519 U.S. 278, 284 n.3 (1997).

See K N Wattenberg Transmission Ltd., 83 F.E.R.C. ¶ 61,006 (1998). It repeated

its conclusion that KNW's proposed facilities were neither local distribution

facilities nor Hinshaw Amendment facilities.

Fort Morgan then filed a timely Petition for Review with this court,

followed by an Application for Stay of FERC Orders 81 F.E.R.C. ¶ 61,167 and 83

F.E.R.C. ¶ 61,006. Leprino and Excel together, followed by KNW and FERC

separately, filed motions opposing the stay application. On June 22, 1998, this

court denied the motion for a stay. KNW's proposed facilities were constructed

and went into service, providing gas to Leprino's and Excel's plants as of June 7,

1998. Because of the new KNW line, Fort Morgan has lost Leprino and Excel as

natural gas customers, resulting in a 19% decline in its gas revenues.

Fort Morgan argues on appeal that FERC erred in asserting jurisdiction

over the new KNW line because it is a Hinshaw Amendment facility under section

1(c) of the NGA. Intervenor PSCC agrees. Intervenor the Colorado Public

Utilities Commission ("CPUC") has filed a brief, although not specifically in

support of any party. [4]

---

[4]The CPUC never actually intervened in the FERC proceedings. We
granted the CPUC leave to intervene in this petition for review of FERC's orders.
Its brief to this court explains why, in its view, KNW's new facilities are subject
to regulation by the CPUC. FERC has filed a motion to strike the CPUC's brief
on numerous grounds: (1) no party raised before FERC the issues discussed in the
CPUC's brief, (2) it is untimely, and (3) it is irrelevant.

(continued...)

FERC argues (1) neither Fort Morgan nor intervenor PSCC is aggrieved by FERC's orders, so Fort Morgan's petition for review and PSCC's motion to intervene should be dismissed for lack of jurisdiction; and, (2) alternatively, assuming jurisdiction is proper over this petition, FERC properly determined it has jurisdiction over the new KNW line. Intervenors KNW, Leprino and Excel support FERC in its exercise of jurisdiction over the new KNW line.

## DISCUSSION

### I. Aggrieved Party

Section 19(b) of the NGA, 15 U.S.C. § 717r(b), allows only parties "aggrieved" by FERC orders to seek review in the court of appeals. See First Nat'l Oil, Inc. v. FERC, 102 F.3d 1094, 1096 (10th Cir. 1996). FERC argues neither Fort Morgan nor PSCC, as intervenor, have been "aggrieved" by FERC's exercise of jurisdiction over the KNW line.

---

[4](...continued)
We deny the motion to strike. Contrary to FERC's assertions, the issue of whether the new KNW facilities meet the Hinshaw Amendment element of being "subject to" state commission regulation has been raised and argued throughout these entire proceedings, both before FERC and in this petition for review. FERC chose to address it only cursorily in its orders. We presume FERC will explore this issue more fully on remand.

Various other pleadings and motions relating to those pleadings have been filed. We deny all these outstanding motions.

We have held that, to be "aggrieved" under section 19(b), "a party must demonstrate a 'present and immediate' injury in fact, or 'at least . . . a looming unavoidable threat' of injury, as a result of the FERC order." Id. (quoting Williams Gas Processing Co. v. FERC, 17 F.3d 1320, 1322 (10th Cir. 1994)). The petitioner (Fort Morgan in this case) bears the burden of alleging sufficient facts to prove a concrete, non-speculative harm. See id.; see also Colorado Interstate Gas Co. v. FERC, 83 F.3d 1298, 1300-01 (10th Cir. 1996).

We conclude that Fort Morgan, as petitioner, is "aggrieved" by FERC's orders and may therefore challenge those orders in this appeal. FERC's assertion of jurisdiction and grant of authorization was the catalyst for KNW's building the new line to serve Leprino's and Excel's natural gas needs. That new line, in turn, directly resulted in Fort Morgan's loss of Leprino and Excel as natural gas customers, and a concomitant loss of 19% of the City's natural gas revenues. While, of course, we do not know with certainty whether Leprino and Excel would have arranged for alternative gas supplies had FERC refused KNW's request, or would have simply continued to purchase gas from Fort Morgan, the possibility that Fort Morgan would have suffered no loss, or could potentially

recoup any loss from other customers, is pure speculation, while the actual loss of natural gas revenues is obvious. [5]

## II. FERC Jurisdiction

We review the Commission's assertion of jurisdiction "'to ascertain whether the decision has an adequate basis in law.'" Cascade Natural Gas Corp. v. FERC, 955 F.2d 1412, 1415 (10th Cir. 1992) (quoting Northwest Pipeline Corp. v. FERC, 905 F.2d 1403, 1407-08 (10th Cir. 1990)). "In making that determination . . . we 'are under no obligation to defer to the agency's legal conclusions.'" Id.[6] The Commission's factual findings, "if supported by substantial evidence, shall be conclusive." 15 U.S.C. § 717r(b).

_____

[5]Because the petitioner, Fort Morgan, is "aggrieved," we are satisfied that it has standing and this appeal is properly before this court. Thus, the only issue in this appeal – whether FERC correctly exercised its jurisdiction over the KNW line – is before us. We therefore need not examine whether PSCC, as an intervenor, was "aggrieved." In any event, we may consider PSCC's arguments because we may treat it as an amicus in this matter. See Fed. R. App. P. 29(a); see also Rio Grande Pipeline Co. v. FERC, 1999 WL 362832 at *5-6 (D.C. Cir. June 8, 1999).

[6]We noted in Cascade Natural Gas that the prior Tenth Circuit cases upon which we relied in stating that we afford no deference to the agency's legal conclusions did not discuss the Supreme Court's analysis in Chevron USA, Inc. v. NRDC, 467 U.S. 837 (1984). See 955 F.2d at 1415 n.3. However, even those courts which do observe some obligation to defer to FERC's decisions under Chevron have observed that such deference is only required where FERC's decision is reasonable. See, e.g., Public Utils. Comm'n v. FERC, 143 F.3d 610, 615 (D.C. Cir. 1998) ("We defer to FERC's 'interpretation of its authority to exercise jurisdiction' if it is reasonable."). In light of our disposition of this case, any deference would be unwarranted.

Section 1(b) of the NGA confers on FERC plenary jurisdiction over (1) the "transportation of natural gas in interstate commerce," (2) the "sale in interstate commerce of natural gas for resale," and (3) "natural-gas companies engaged in such transportation or sale." 15 U.S.C. § 717(b). The Hinshaw Amendment excludes from FERC's jurisdiction the following:

> [A]ny person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission.

15 U.S.C. § 717(c); see also Public Utils. Comm'n v. FERC, 143 F.3d 610, 614 (D.C. Cir. 1998).

Fort Morgan argues that § 717(c) applies here – KNW, a legal person, receives natural gas from another legal person (CIG) within the boundary of the state of Colorado, and all such gas so received is consumed, by Leprino and Excel, within the state of Colorado. Additionally, the statute requires that the rates and service of such person or facilities be "subject to" regulation by a State commission (in this case, the CPUC). The CPUC asserts in its brief to this court that KNW's new line is subject to its regulation.

FERC and KNW respond that the Hinshaw Amendment does not apply to the new KNW line because (1) the new line and facilities are "integrated" with

-10-

KNW's existing interstate facilities; (2) FERC correctly held that the Hinshaw Amendment applies to the "whole company" and not to discrete facilities of a company; (3) Fort Morgan cannot argue that previous decisions by FERC and its predecessor, the Federal Power Commission ("FPC"), contradict FERC's exercise of jurisdiction in this case, because Fort Morgan failed to specifically argue such contradiction in its petition for rehearing; and (4) the CPUC is not in fact exercising jurisdiction over the new KNW facilities, so those facilities fail to meet the Hinshaw requirement that they be "subject to" state commission regulation.

In concluding that the new KNW facilities were subject to its jurisdiction, FERC reasoned that "the Hinshaw Amendment applies to the whole company (person), and not to isolated segments. . . .  Individual pieces or segments of integrated interstate pipeline systems are not exempt from regulation by the Commission under the Hinshaw Amendment."  K N Wattenberg, 81 F.E.R.C. ¶ 61,167, at 61,740.  The Commission also observed that "there is no indication in the record that the Colorado PUC is attempting or has attempted to assert its jurisdiction over [KNW's] proposed facilities."  Id.  After concluding that the proposed project was in the public convenience and necessity, FERC authorized the construction and operation of the proposed facilities under KNW's blanket certificate.

-11-

CIG and PSCC filed for rehearing. Fort Morgan filed for rehearing and clarification. [7] CIG's request for rehearing alleged error to the extent the Commission's order would compel CIG to alter its existing facilities to permit KNW to operate the proposed facilities integrally with CIG's existing system. The Commission on rehearing stated that its November 4 order "did not compel any change in the operation of CIG's system." 83 F.E.R.C. ¶ 61,006, at 61,022.

Fort Morgan and PSCC reasserted their argument that the proposed facilities were exempt from FERC jurisdiction under the Hinshaw Amendment. FERC's response was as follows:

> Initially, we are unpersuaded by Fort Morgan's interpretation of the statute itself. Fort Morgan claims, for instance, that one test for Hinshaw status in this case is met, because the state Commission has jurisdiction over the proposed facility. This argument begs the question, however, because the state may not assert jurisdiction that it lacks because of the Commission's preemptive jurisdiction under the Natural Gas Act. Nor does the statute support Fort Morgan's claim that the state may have jurisdiction over some of the facilities of an otherwise jurisdictional natural gas company. As we explained in the prior order in this case, the Hinshaw exemption applies to "persons," which is defined to include companies. By its terms it does not apply separately to discrete facilities owned by a company. Fort Morgan is correct that Section 1(c) exempts facilities used by a Hinshaw pipeline, but the company itself, i.e., the statutory person,

_____

[7]In its request for clarification, Fort Morgan sought clarification that the Commission's order would not permit KNW to construct a local distribution network. The Commission on rehearing stated that the order needed no further clarification, as it specifically found KNW's proposed facilities to be transmission facilities, not local distribution facilities. Thus, the Commission viewed its order as prohibiting KNW from constructing any such local distribution network.

-12-

> must first qualify as a Hinshaw company before its facilities are exempt.

Id. Thus, FERC's position in this case appears to be that an otherwise jurisdictional interstate company can never engage in discrete activities with discrete facilities which would otherwise be exempt from FERC jurisdiction under the Hinshaw Amendment. FERC demonstrated the parameters of this "all-or-nothing" position at oral argument of this case, where, when asked if a Hinshaw company began to engage in some interstate transmission of gas in a location remote from and not physically connected to the location of its Hinshaw activities, the company would thereby subject its entire operations to FERC jurisdiction. FERC's counsel responded that it would.

Fort Morgan, and intervenor PSCC, argue that this position is inconsistent with the language of the Hinshaw Amendment itself, with the position taken by FERC and the FPC in prior proceedings, and with federal case law applying the Hinshaw Amendment. We agree.

It is contrary to the language of the Hinshaw Amendment because it reduces the specific requirements for qualification under the statute to a single question: whether the "person" selling or transporting the gas is engaged anywhere in interstate activities subject to FERC regulation. For example, it would be irrelevant whether the gas was in fact consumed within the state, if ownership of the facility by an interstate pipeline was determinative. Indeed, this

-13-

case precisely demonstrates the point: the new KNW line appears to meet all the statutory requirements, yet FERC says it does not because KNW's other facilities are interstate jurisdictional facilities.

Moreover, this view seems contrary to prior FERC decisions where Hinshaw exemptions were granted to separate facilities which were nonetheless owned by an interstate pipeline. As Fort Morgan points out, and our own research reveals, shortly after the Hinshaw Amendment was enacted, FERC's predecessor, the FPC, ruled in a series of decisions that particular facilities of an interstate pipeline, which were not connected with the remainder of the interstate pipeline's interstate facilities, were exempt from FERC jurisdiction under the Hinshaw Amendment. See, e.g., Consolidated Gas Utils. Corp., 13 F.P.C. 1459 (1954); California-Pacific Utils. Co., 13 F.P.C. 1498 (1954); California-Pacific Utils. Co., 13 F.P.C. 1499 (1954). This reasoning continued in subsequent FERC decisions. See, e.g., Arkansas Western Gas Co., 56 F.E.R.C. ¶ 61,407 (1991); Associated Natural Gas Co., 43 F.E.R.C. ¶ 61,304, at 61,832 (1988) (specifically stating that "an individual company can be engaged in both jurisdictional and nonjurisdictional activities"); Associated Natural Gas Co., 38 F.E.R.C. ¶ 62,188 (1987); Eastern Natural Gas Co., 37 F.E.R.C. ¶ 61,082 (1986); Pataya Storage Co., 21 F.E.R.C. ¶ 61,275 (1982); see also Mountain Fuel Supply Co., 32 F.P.C. 535 (1964). As Fort Morgan further points out, the FPC specifically stated in one

-14-

of its decisions that a "common element in Section 1(c) exemptions we have granted to interstate pipeline companies is that of separate and unconnected systems, wherein the exempted facilities have been isolated from the main transmission system." Tennessee Gas Pipeline Co., 54 F.P.C. 2713, 2715 (1975) (footnote omitted).[8]

Courts interpreting the Hinshaw Amendment have similarly acknowledged that the same company can engage in both Hinshaw exempt activities and FERC regulated activities, at least as long as the intrastate and interstate activities and/or facilities are not clearly a part of a single integrated system. Indeed, in Public Utils. Comm'n v. FERC, 143 F.3d 610, 615-16 (D.C. Cir. 1998), the court specifically rejected the argument FERC appears to make in this case, that the Hinshaw Amendment applies to the whole "person." See id.[9]

---

[8]FERC argues Fort Morgan should not be permitted to make this argument on appeal, because it failed to raise the issue of inconsistency with FERC's prior decisions in its petition for rehearing before FERC. By statute, 15 U.S.C. § 717r(b), a party wishing to challenge a FERC order in federal court must raise any issues to be raised in federal court in its request for rehearing before FERC. We are reviewing FERC's orders here for reasonableness and adequacy under the law. Any inconsistency between FERC's orders and either the statute or FERC's prior decisions is, of course, highly relevant to an analysis of the adequacy of FERC's orders, and is apparent from our own legal research.

[9]The court in Public Utils. Comm'n further stated that "[s]ection 717(c) cannot plausibly mean that any person who engages in intrastate activities is exempt from FERC jurisdiction in all activities; otherwise any interstate pipeline could free itself from all FERC regulation simply by engaging in some intrastate transport." Public Utils. Comm'n, 143 F.3d at 615. Although that case dealt with

(continued...)

-15-

Oklahoma Natural Gas Co. v. FERC, 28 F.3d 1281 (D.C. Cir. 1994), also supports Fort Morgan's position. In agreeing with FERC that it had jurisdiction over a lateral gas pipeline connecting its interstate pipeline with a cogeneration plant, the court relied on the fact that the lateral was integrated into the interstate pipeline, enabling the owner to utilize the lateral as a part of its overall interstate system. See id. at 1286-87. Additionally, the oft-cited case of Louisiana Power & Light Co. v. FPC, 483 F.2d 623 (5th Cir. 1973) supports Fort Morgan's position. In affirming the assertion of FPC jurisdiction over two smaller facilities, both owned by the same company, the court focused on the fact that the two facilities were part of an integrated interstate system. Such an analysis would have been unnecessary were the test simply ownership by an interstate pipeline.

By contrast, in this case, it appears that the only integration of the new KNW pipeline serving Leprino and Excel and the rest of KNW's interstate facilities is that they are both owned by the same "person." That concept of integration (ownership by the same "person") is fundamentally at odds with the concept, expressed in prior FERC decisions, that the same company can engage in jurisdictional and non-jurisdictional Hinshaw exempt activities. To the extent

---

[9](...continued)
the reverse of what this case involves (in Public Utils. Comm'n a Hinshaw pipeline was attempting to avoid FERC regulation, whereas here an interstate pipeline is attempting to avoid state regulation) the "all or nothing/whole person" analysis can go either direction.

-16-

FERC's reasoning in this case rests additionally on the physical or functional integration of KNW's new and existing facilities, FERC has simply failed to explain adequately why we should view the new KNW line as an integral part of KNW's interstate facilities. [10] Any factual finding on the point is not supported by substantial evidence.

In sum, FERC's position in this case does appear inconsistent both with the plain language of the Hinshaw Amendment and with its prior published decisions. [11] FERC does not explain the basis for this apparently

_____

[10]We also find inadequate FERC's explanation for why KNW's new line failed to meet the "subject to regulation by a State commission" requirement. The Hinshaw Amendment requires that the facility be "subject to" such regulation. By contrast, FERC's orders in this case suggest that the only relevant inquiry is whether the state has in fact asserted jurisdiction, and then conclude that the state could not assert such jurisdiction here because FERC already has preemptive jurisdiction. First, this explanation is unclear. Second, this view ignores the element of potentiality in "subject to." The record in this case reveals that the CPUC was unaware of the proposed pipeline until just before FERC issued its order exercising jurisdiction, and the facilities did not exist at the time FERC rejected Hinshaw Amendment status.

[11]In a subsequent, unrelated FERC proceeding, in which KNW sought FERC approval for construction of another pipeline facility, and in which CIG, CPUC and CPSC all intervened, arguing that the proposed pipeline should be exempt from FERC jurisdiction under the Hinshaw Amendment, FERC reiterated its "whole person" jurisdictional analysis:

Given that K N Wattenberg is an interstate natural gas pipeline company, all K N Wattenberg facilities are subject to our NGA jurisdiction. Consequently, K N Wattenberg's ownership and operation of the new facilities renders irrelevant both the assertion that Front Runner will be physically and operationally segregated

(continued...)

-17-

inconsistent position, other than to state that the decision "furthers the

Commission's policy of promoting competition."     K N Wattenberg , 83 F.E.R.C.

¶ 61,006, at 61,023.  However, as we have previously observed, "the 'express

jurisdictional limitation on FERC's powers contained in § 1(b) of the NGA'

---

[11](...continued)
from K N Wattenberg's other facilities and the contention that all gas
carried by Front Runner will be consumed within Colorado.

K N Wattenberg Transmission Ltd., 84 F.E.R.C. ¶ 61,010, at 61,043 (1998)
(footnotes omitted).  However, interspersed throughout the order are references to
the significance of the fact that the proposed pipeline and KNW's existing lines
would operate as part of a single integrated system:  "We are not persuaded that
the Front Runner line will not function as an extension or expansion of K N
Wattenberg's existing system. . . . We do not believe that these processing plants .
. . interrupt the operational integration of K N Wattenberg's existing and
proposed facilities."  Id.  In distinguishing some of its prior cases holding that
interstate pipelines may also own discrete Hinshaw facilities, FERC stated:

> None of these cases, however, explains how that view may be
> reconciled with the statute that on its face applies Hinshaw status to
> the entire company.  In any event, the facts of those cases are
> materially different than the situation here.  K N Wattenberg's Front
> Runner pipeline will be a physical extension of K N Wattenberg's
> mainline, not a "discrete" facility.

Id., at 61,043 n. 31.  Later, FERC stated, "[t]he ultimate jurisdictional
determination depends, of course, not on the intent of the parties, but on the
actual function of the facilities."  Id., at 61,044 n.38.

In its order denying rehearing in that case, FERC seemed to focus even
more on the physical and functional integration of the proposed and existing
facilities: "Because we find that the Front Runner facilities will serve as an
extension, expansion, or local branch of an integrated interstate pipeline system,
the Front Runner facilities cannot qualify for exemption under the Hinshaw
Amendment."  K N Wattenberg Ltd., 85 F.E.R.C. ¶ 61,204, at 61,856.

cannot be recast or obscured in the agency's attempt to formulate policy to protect the public interest and burner-tip consumer." Northwest Pipeline Corp. v. FERC, 905 F.2d 1403, 1407 (10th Cir. 1990) (quoting Northwest Central Pipeline Corp. v. State Corp. Comm'n, 489 U.S. 493, 512 (1989)). FERC also notes that the "regulatory landscape" is different now from what it was when the Hinshaw Amendment was enacted. [12] Nevertheless, the language of the statute remains the same, and FERC's prior published decisions state what they state.

Accordingly, because FERC's reasons for exercising its jurisdiction in this case fail to adequately explain its apparent change in the way it interprets the Hinshaw Amendment, [13] we grant the petition, reverse the decisions in K N Wattenberg Ltd., 81 F.E.R.C. ¶ 61,167 and 83 F.E.R.C. ¶ 61,006 and remand the case for further proceedings.

_____

[12]In its order denying rehearing in the subsequent decision discussed supra in note 11, FERC alluded to its prior decisions setting "a lower hurdle for bifurcating an interstate pipeline's facilities into jurisdictional and Hinshaw-exempt segments," explaining those decisions as "attributable in part to the nature of the natural gas industry at that time." 85 F.E.R.C. ¶ 61,204, at 61,856.

[13]"[W]here an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." ANR Pipeline Co. v. FERC, 71 F.3d 897, 901 (D.C. Cir. 1995).