Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S. App. D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 15, 2005               Decided April 15, 2005

No. 04-1111

MICHIGAN PUBLIC POWER AGENCY AND
MICHIGAN SOUTH CENTRAL POWER AGENCY,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MICHIGAN ELECTRIC TRANSMISSION COMPANY, LLC,
INTERVENOR

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Alan I. Robbins* argued the cause and filed the briefs for petitioners.

*Robert H. Solomon*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and

*Dennis Lane*, Solicitor.

Before: SENTELLE, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Circuit Judge* HENDERSON.

ROGERS, *Circuit Judge*:  Michigan Public Power Agency and Michigan South Central Power Agency (collectively "Michigan Agencies") petition for review of two orders of the Federal Energy Regulatory Commission ruling that Michigan Electric Transmission Company ("METC") could pass through to the Michigan Agencies a share of the annual charges that the Commission had assessed directly to the Midwest Independent Transmission System Operator, Inc. ("MISO") and that, in turn, had been passed through to METC.  The Michigan Agencies contend that the Commission acted beyond its statutory authority when it approved an amendment to their Transmission Ownership and Operating Agreements ("Operating Agreements") allowing METC to pass through annual charges to them, and that the Commission failed to engage in reasoned decisionmaking when, for the first time, it did not distinguish between the transmission that the Michigan Agencies take pursuant to their ownership interests and the transmission that they take as tariff customers.  While we find no merit to the Michigan Agencies' contention that the Commission lacked authority to allow the pass-through of annual charges to them, because the Commission failed to provide an adequate explanation for its apparent departure from past practice, we grant the petition for review and remand the case to the Commission for further explanation.

**I.**

The Commission has a nearly twenty-year history of assessing annual charges directly to public utilities. As the court recently noted, the Commission is "[o]bligated by statute to recoup its costs from industries it regulates." *Midwest Indep. Transmission Sys. Operator, Inc. v. FERC* ("*MISO II*"), 388 F.3d 903, 905 (D.C. Cir. 2004). In the Omnibus Budget Reconciliation Act of 1986, Congress required the Commission to "assess and collect fees and annual charges in any fiscal year in amounts equal to all of the costs incurred by the Commission in that fiscal year." 42 U.S.C. § 7178(a)(1) (2000). According to the Commission, it "is required to collect not only all its direct costs but also all its indirect expenses such as hearing costs and indirect personnel costs." *Revision of Annual Charges Assessed to Public Utilities*, Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,841 n.4, 65 Fed. Reg. 65,757, 65,757 (Nov. 2, 2000). These annual charges, however, may be directly assessed only to public utilities. *See* 16 U.S.C. § 824(f) (2000); 18 C.F.R. § 382.201 (2004).

The Commission initially calculated annual charges with respect to electricity regulation based on both a public utility's transmission and wholesale sales in interstate commerce. *See Annual Charges Under the Omnibus Budget Reconciliation Act of 1986*, Order No. 472, FERC Stats. & Regs. ¶ 30,746, 52 Fed. Reg. 21,263 (June 5, 1987). In 2000, however, the Commission altered its methodology for calculating annual charges in Order No. 641 to consider only the transmission of electricity in interstate commerce by public utilities. *See* Order No. 641, FERC Stats. & Regs. ¶ 31,109, 65 Fed. Reg. 65,757 (Nov. 2, 2000) (codified at 18 C.F.R. § 382.201). *See generally MISO II*, 388 F.3d at 906-08.

The Commission's methodological shift in calculating annual charges was motivated in large part by the sweeping changes in the electricity industry brought about by Order No.

888, FERC Stats. & Regs. ¶ 31,036, at 31,654, 61 Fed. Reg. 24,540, 21,551 (May 10, 1996), and related orders that, among other things, required the functional unbundling of transmission and generation services, required public utilities' transmission facilities to guarantee nondiscriminatory access for all market participants, and encouraged utilities to place transmission assets under the control of umbrella entities called "regional transmission organizations" ("RTOs") or "independent system operators" ("ISOs"). *See generally MISO II*, 388 F.3d at 906; *Midwest ISO Transmission Owners v. FERC* ("*MISO I*"), 373 F.3d 1361, 1363-65 (D.C. Cir. 2004). Regarding the last feature, the Commission envisioned that an ISO, like MISO, "would assume operational control — but not ownership — of the transmission facilities owned by its member utilities, thereby 'separat[ing] operation of the transmission grid and access to it from economic interests in generation.'" *MISO I*, 373 F.3d at 1364 (quoting Order No. 888, FERC Stats. & Regs. ¶ 31,036, at 31,654, 61 Fed. Reg. at 21,551).

Under Order No. 641, the Commission assesses annual charges to each public utility that provides transmission service. Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,855, 65 Fed. Reg. at 65,758. Specifically, Order No. 641 states:

> If an ISO or RTO public utility has taken over from individual public utilities the function of providing transmission service and has, accordingly, a tariff or rate schedule (and thus rates) on file for such service, then it is the ISO or RTO public utility that will be responsible for paying annual charges, and it will be assessed annual charges based on all transmission that it provides pursuant to its tariff or rate schedule. If an individual public utility continues to provide transmission service, however, and still has, accordingly, a tariff or rate schedule (and thus rates) on file for such service, then that individual public

utility will continue to be responsible for paying annual charges.

*Id.* (footnotes omitted). The Commission also stated in Order No. 641 that it would "continue its existing policy that municipal utility systems . . . will not be required to pay annual charges." *Id*. at 31,485, 65 Fed. Reg. at 65,760.

MISO provides transmission service, *see generally MISO I*, 373 F.3d at 1365, and therefore the Commission directly assesses annual charges to MISO rather than to METC or other transmission owners in the region that MISO serves. The transmission owners first report their transmissions in megawatts to MISO, which converts them to megawatt hours and reports that figure to the Commission. *See Mich. Elec. Transmission Co.*, 104 F.E.R.C. ¶ 61,236, at 61,806 n.9. (2003) ("*Initial Order*"). The Commission then calculates MISO's annual charges based on the proportion of its megawatt hours compared to all other public utilities operating in interstate commerce. *See* Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,841-42, 65 Fed. Reg. at 65,758 (codified at 18 C.F.R. § 382.201(b)). The Commission bills MISO, which, in turn, may pass through a proportionate share of the annual charges to various transmission owners, like METC, through its rates. *See id.* at 31,855-57, 65 Fed. Reg. at 65,765-67. These transmission owners, in turn, may pass through the charges to their customers, regardless of whether the customers are jurisdictional utilities. *See id.* at 31,845 n.34, 65 Fed. Reg. at 65,760 n.34. As Order No. 641 makes clear, and the Commission reiterated here, while annual charges may not be directly assessed to non-jurisdictional utilities, like the Michigan Agencies, *see id.* at 31,845, 65 Fed. Reg. at 65,760; *see also* 16 U.S.C. § 824(f), "[a]s transmission customers they may, of course, be charged rates by the transmission provider that reflect annual charges assessed to the transmission provider," Order No. 641, FERC

Stats. & Regs. ¶ 31,109, at 31,845 n.34, 65 Fed. Reg. at 65,760 n.34.

The petition for review arises from METC's June 30, 2003 filing pursuant to 16 U.S.C. § 824d to amend the Operating Agreements so that, as relevant, it could pass through a share of the Commission's annual charges to the Michigan Agencies. Noting that the Operating Agreements gave it the right to apply unilaterally to the Commission for an amendment, METC stated that it sought to recover "its prudently incurred costs associated with service to the Customers," which are "municipal power agencies that purchase transmission service for their members within the METC pricing zone." Filing of Mich. Elec. Transmission Co., Docket No. ER03-1003-00, at 2, 4 (June 30, 2003). METC's amendment states, in relevant part:

> If the Capacity Entitlement of [the Michigan Agencies] served hereunder is treated under the [MISO] Open Access Transmission Tariff . . . as [the Michigan Agencies] load served by the METC system such that the MISO imposes charges on METC in connection with such entitlement, [the Michigan Agencies] shall reimburse METC for the full amount of [their] share of any charges paid by METC for . . . annual charges assessed to public utilities pursuant to 18 CFR [§] 382.201 imposed on METC in connection with the [Michigan Agencies'] Capacity Entitlement.

*Id.* at Exhibit A.

The Michigan Agencies intervened and protested the amendment on the ground that it would be unlawful to pass through annual charges to them. They argued that as municipal agencies, they are not "public utilities" subject to the Commission's jurisdiction under 18 C.F.R. § 382.201, and that as co-owners of the METC transmission system, they have not

previously been subject to annual charges, an exemption they noted is reflected in Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,845, 65 Fed. Reg. at 65,760. The Commission, while acknowledging that the Michigan Agencies "acquired an interest in and use rights over the METC transmission system," approved METC's amendment to the Operating Agreements. *Initial Order*, 104 F.E.R.C. ¶ 61,236, at 61,805. It concluded that "whether [the] Michigan Agencies are considered customers or co-owners of the METC transmission system, the Commission's annual charges may be allocated to them by METC for service provided by METC." *Id.* at 61,806. The Commission explained that METC could pass through the annual charges to the Michigan Agencies because "METC is being assessed these costs based on the Michigan Agencies' capacity entitlement being transmitted by [MISO] over the [MISO] transmission system, under the [MISO open access transmission tariff], within the METC pricing zone." *Id.* Denying rehearing, the Commission acknowledged its "existing policy" under Order No. 641 exempting municipal systems from paying annual charges, but reasoned that as "transmission customers," municipal utilities "may, of course, be charged rates by the transmission provider that reflect annual charges assessed to the transmission provider. . . . 'How the [annual charge] is recovered is a matter of the public utility's ratemaking.'" *Mich. Elec. Transmission Co.*, 106 F.E.R.C. ¶ 61,064, at 61,206 (2004) ("*Rehearing Order*") (alteration in original) (quoting *Midwest Indep. Transmission Sys. Operator, Inc.*, 103 F.E.R.C. ¶ 61,048, at 61,180 n.25 (2003)). This petition followed.

## II.

The Michigan Agencies make only a limited challenge to the pass-through of charges to them. They do not object to the pass-through of MISO's administrative costs in Schedule 10 of its open access transmission tariff. *See generally MISO I*, 373 F.3d at 1366. Nor do they object to the pass-through of annual

charges when they take transmission in excess of their ownership interests and thus take transmission as METC's customers at its "tariff use" rates. They do object, however, to METC's pass-through of annual charges for the portion of the transmission that they take pursuant to their ownership interests.

The Commission is responsible for regulating public utilities' rates and charges to ensure that they are just and reasonable and not unduly discriminatory. 16 U.S.C. §§ 824d, 824e. The court reviews the Commission's approval of METC's amendment to the Operating Agreements to determine whether the Commission has acted in an arbitrary and capricious manner, *see* 5 U.S.C. § 706(2)(A) (2000); *MISO I*, 373 F.3d at 1368, and affords particular deference to the Commission's expertise when ratemaking is at issue, *Ass'n of Oil Pipe Lines v. FERC*, 83 F.3d 1424, 1431 (D.C. Cir. 1996). The Commission, however, may change its policy only if it provides "a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970); *see also Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-42 (1983).

Despite the similarity of the issues involved, the court's recent decisions in *MISO I* and *MISO II* do not control our decision here. In *MISO I*, the court denied a petition for review of the Commission's orders that non-jurisdictional utilities could be charged a share of MISO's administrative costs. 373 F.3d at 1372. The court reasoned that because the charges passed through to transmission owners reflected the "administrative costs of *having* an ISO," *id.* at 1371, those charges should be shared by all loads — even those not subject to MISO's open-access tariff transmission rates, *id.* at 1369. Here, however, the issue involves recouping the Commission's annual costs of regulating public utilities and not MISO's costs as an ISO. In

*MISO II,* the court simply held that the petitioner had presented insufficient evidence of changed circumstances to warrant ordering a new rulemaking on the methodology for calculating annual charges, *MISO II*, 388 F.3d at 911-13, and it did not involve an application of that methodology.

As a threshold matter, we reject the Michigan Agencies' contention that, because they are not public utilities, the Commission acted beyond its statutory authority when it included the transmission capacity they take pursuant to their ownership interest when calculating annual charges. Although the Michigan Agencies are non-jurisdictional municipal utilities that may not be assessed annual charges directly, *see* 16 U.S.C. § 824(f); 18 C.F.R. § 382.201; Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,855, 65 Fed. Reg. at 65,765, they point to nothing that would show that there is a jurisdictional bar either to including that transmission capacity when calculating annual charges or to passing through a share of those charges to the Michigan Agencies. The Michigan Agencies make no contention that they are exempt from such charges because they operate only in intrastate commerce. They use MISO's transmission system when they take transmission pursuant to their Operating Agreements, *see Initial Order*, 104 F.E.R.C. ¶ 61,236, at 61,806; *cf. MISO I*, 373 F.3d at 1369, and the Commission's annual charges seek to recover its costs of regulating public utilities, which include MISO and its transmission system, *see* Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,841, 65 Fed. Reg. at 65,757. Because the Michigan Agencies use a public utility's transmission system when they take transmission pursuant to their ownership interests, and the Commission regulates that system and incurs costs for such regulation that it seeks to recoup through its annual charges, the Michigan Agencies fail to show that, by reason of their not being public utilities, the Commission is not empowered to include their transmission taken pursuant to their ownership interests

when calculating annual charges and to permit a public utility to pass through a proportionate share of its annual charge to them. *Cf. MISO I*, 373 F.3d at 1369.

We are concerned, however, with the Commission's failure to explain its apparent departure from past practice. The Michigan Agencies argued to the Commission that this is the first time that a public utility has sought to pass through annual charges to them based on the transmission they take pursuant to their ownership interests. They contend that including that transmission when calculating annual charges, and thus making no distinction between their use as owners and their use as customers, is an unreasoned departure from the Commission's past practice. Although counsel for the Commission suggested at oral argument that the transmission taken pursuant to the Michigan Agencies' ownership interests had always been included in calculating annual charges and that METC's predecessor, Consumers Power Company, had simply failed to pass through the charges, METC's submissions to the Commission refute that characterization. According to METC, "energy delivered under the Operating Agreements . . . [was] excluded from the energy used to determine [its predecessor's] annual charge assessment each year." Answer of Mich. Elec. Transmission Co. at 9. METC claimed that "under the current reporting regulations, this exclusion has been eliminated." *Id.* The Commission seemingly agreed, for it included that transmission capacity when calculating MISO's annual charges that were passed through to METC. *See Initial Order*, 104 F.E.R.C. ¶ 61,236, at 61,806 & n.9. But it is unclear from the Orders on review what justified this result, and nothing in the record identifies the "reporting regulations" that purportedly eliminated the exclusion of the Michigan Agencies' transmission taken pursuant to their ownership interests.

The Michigan Agencies' ownership interests come from the

Operating Agreements that were executed in the late 1970s and early 1980s and therefore long pre-date Order No. 888 and the creation of MISO. The Commission acknowledges that the Operating Agreements have been grandfathered into MISO's open access transmission tariff and are not subject to its rates, terms, and conditions. *See Initial Order*, 104 F.E.R.C. ¶ 61,236 at 61,805; *see also* MISO OATT at § 1.19, *cited in* Br. of Pet'rs at 22 n.54. Order No. 641, however, states that annual charges will be "based on all transmission that [an ISO] provides *pursuant to its tariff or rate schedule*." FERC Stats. & Regs. ¶ 31,109 at 31,855 (emphasis added). Yet, so far as the record before the court reveals, when the Michigan Agencies take transmission pursuant to their ownership interests, MISO is not providing transmission service "pursuant to its tariff or rate schedule" because the grandfathered Operating Agreements are exempt from that schedule.

Counsel for the Commission stated at oral argument that in Order No. 641 the Commission sought to avoid double-recovery by assessing annual charges only on transmission providers, such as RTOs and ISOs where applicable. *See id.* at 31,850, 31,852. Even so, this assertion is nonresponsive to Order No. 641's textual limitation on the calculation of a transmission provider's annual charges to transmission provided "pursuant to its tariff or rate schedule." *Id.* at 31,855. The Commission does not discuss this language in the Orders on review. While "language in the preamble of a regulation is not controlling over the language of the regulation itself," *Entergy Servs., Inc. v. FERC*, 375 F.3d 1204, 1209 (D.C. Cir. 2004) (quoting *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999)) (internal quotation marks omitted), and the annual charge regulations provide for calculation of annual charges based on "the sum of the megawatt-hours of *all unbundled transmission* . . . and the megawatt-hours of all bundled wholesale power sales," 18 C.F.R. § 382.201(c)(1) (emphasis added), the Commission does

not rely on its regulation to justify the apparent change in treatment of the transmission in question.

In any event, in the Orders on review, the Commission declined to recognize any distinction regarding the assessment of annual charges when the Michigan Agencies act as co-owners by taking transmission pursuant to their ownership interests and when they act as customers by taking transmission in excess of those interests. In the *Initial Order*, the Commission stated, "[W]hether [the] Michigan Agencies are considered customers or co-owners of the METC transmission system, the Commission's annual charges may be allocated to them by METC for service provided by METC." 104 F.E.R.C. ¶ 61,236 at 61,806. In its brief to this court, the Commission maintains it acted reasonably in applying a basic cost causation principle in approving METC's cost allocation proposal. It explained that "[w]hat does matter, for ratemaking purposes, is that METC is incurring costs (a share of the annual charges assessed to [MISO] and passed along to METC) that are based on the Michigan Agencies' entitlement to capacity on the [MISO] system under the Operating Agreements." Br. of Resp't at 20. But, in Order No. 641, although the Commission expressly continued its policy of not directly assessing annual charges to municipal power utilities, se*e* Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,845, 65 Fed. Reg. at 65,760, it stated that public utilities could pass through the annual charges to municipal utilities that are "transmission customers," *id.* at 31,845 n.34, 65 Fed. Reg. at 65,760 n.34. Thus, contrary to the Commission's assertions that the Michigan Agencies' status as customers or co-owners is irrelevant, *see Initial Order*, 104 F.E.R.C. ¶ 61,236 at 61,806, nothing else appearing, Order No. 641 seems to contemplate the indirect assessment of annual charges to municipal utilities only when they are "transmission customers." If so, the record does not reveal whether the Michigan Agencies could be considered "transmission customers" even when they take transmission

pursuant to their ownership interests.

Similarly, the Commission failed to address the Michigan Agencies' argument that they are not paying a filed tariff rate to MISO or METC when they take transmission pursuant to their ownership interests. Rather, the Commission concluded: "How the [annual charge] is recovered is a matter of the public utility's ratemaking. Just as a public utility recovers its other transmission-related costs in its rates, so a public utility's annual charges may be recovered in its rates." *Rehearing Order*, 106 F.E.R.C. ¶ 61,064, at 61,206 (quoting *Midwest Indep. Transmission Sys. Operator, Inc.*, 103 F.E.R.C. ¶ 61,048, at 61,180 n.25) (internal quotation marks omitted). But the Michigan Agencies argued that, when taking transmission as co-owners of the METC transmission system, they are not subject to the ratemaking of METC or MISO. Thus, the discussion about recovering costs through ratemaking appears not to support the pass-through of annual charges here.

Counsel for the Commission, at oral argument, focused on the fact that the amendment to the Operating Agreements contains conditional language that permits METC to pass through annual charges to the Michigan Agencies only if METC received such charges from MISO. This characterization presupposes that it is proper to include the Michigan Agencies' transmission taken pursuant to their ownership interests in the calculations for annual charges. If it is improper under Order No. 641 to assess annual charges directly to MISO and indirectly to METC based on that transmission, then this explanation falls apart. Undoubtedly, METC will incur trapped costs if the annual charges that are passed through to METC include the Michigan Agencies' transmission taken pursuant to their ownership interests and METC is then unable to pass through those charges to the Michigan Agencies (or its other customers). But avoidance of trapped costs and reliance on the maxim that "cost allocation

follows cost responsibility," Br. of Resp't at 13, are insufficient reasons to justify the amendment absent a showing that the transmission that the Michigan Agencies take pursuant to their ownership interests may be included in the transmission capacity used to calculate the annual charges.

The Commission may readily be able to explain its acceptance of METC's amendment to the Michigan Agencies' Operating Agreements in light of the concerns we have identified. It may turn on a simple explanation of what it means to be a "transmission customer." Order No. 641, FERC Stats. & Regs. ¶ 31,109, at 31,845 n.34, 65 Fed. Reg. at 65,760 n.34. Or the Commission may be able to explain that Order No. 641 authorizes the amendment, and, if so, that the Michigan Agencies cannot mount a collateral attack on that Order absent unforeseen circumstances or special factors. *See, e.g., Transwestern Pipeline Co. v. FERC*, 988 F.2d 169, 174 (D.C. Cir. 1993). Or the Commission may be able to explain that it always has included the transmission taken pursuant to ownership interests in calculating annual charges such that it did not depart from past practice. However, because the Orders on review do not address adequately the legitimacy of the pass-through of the Commission's annual charges in light of the Michigan Agencies' status as co-owners of the METC transmission facilities and as municipal power utilities, and do not address at all the Michigan Agencies' contention that the Commission's action is a departure from past practice, the court is not in a position to defer to the Commission's expertise.

Accordingly, we grant the petition for review and remand the case to the Commission for further explanation.

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring:

While I agree with the remand to the Commission, I am apparently more concerned about the threshold jurisdictional question than my colleagues. I, at least, would like the Commission to explain how, as the petitioners say, it can do indirectly what it cannot do directly. Reply Br. of Pet'r at 4–5. The FERC's jurisdiction does not extend to "facilities used in local distribution or only for the transmission of electric energy in intrastate commerce." 16 U.S.C. § 824(b)(1). Nor does its jurisdiction extend to entities that are not "public utilities," *id.* at § 824(e)–(f), which both parties agree the petitioners are not. The regulation providing for the annual charges authorizes the imposition of such costs only with respect to "public utilities." 18 C.F.R. § 382.201(a). In response to the petitioners' argument below that their transmission capacity entitlements as non-jurisdictional owners of part of the METC generation system should not be included in the calculation of the FERC's annual charge, the Commission stated:

> [W]hether [petitioners] are considered customers or co-owners of the METC transmission system, the Commission's annual charges may be allocated to them by METC for service provided by METC. METC is being assessed these costs based on the [petitioners] capacity entitlement being transmitted by the Midwest ISO over the Midwest ISO transmission system, under the Midwest ISO OATT, within the METC pricing zone.

104 F.E.R.C. ¶ 61,236 at 61,806 (2003). This "explanation," to me, is less than compelling. It is the FERC's responsibility to assert an adequate basis in law for its exercise of jurisdiction. *City of Ft. Morgan v. FERC*, 181 F.3d 1155, 1159 (10th Cir. 1999); *see also Oklahoma Natural Gas Co. v. FERC*, 906 F.2d 708, 709 (D.C. Cir. 1990) ("[W]e do not think the Commission's terse explanation of the basis for its exercise of jurisdiction is adequate to permit judicial review."). The FERC may be able

to rest its jurisdictional claim on the foundation built in Order No. 888, *see Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities*, Order No. 888, 61 Fed. Reg. 21,540 (final May 10, 1996), *on reh'g*, Order No. 888-A, 62 Fed. Reg. 12,274 (March 14, 1997), *order on reh'g*, Order No. 888-B, 81 F.E.R.C. ¶ 61,248 (1997), *order on reh'g*, Order No. 888-C, 82 F.E.R.C. ¶ 61,046 (1998), or our earlier declaration in *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361 (D.C. Cir. 2004), that MISO's operational authority over transmission loads on the system "reaches even the bundled and grandfathered loads that are not subject to MISO's open-access tariff transmission rates." *Id*. at 1369. In any event, I believe that it is the FERC, rather than this court, that must first, and adequately, explain the basis of its jurisdiction.