# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 16, 2010      Decided December 21, 2010

No. 10-1022

HONEYWELL INTERNATIONAL, INC.,
PETITIONER

v.

NUCLEAR REGULATORY COMMISSION AND UNITED STATES OF
AMERICA,
RESPONDENTS

———

On Petition for Review of an Order
of the Nuclear Regulatory Commission

———

*Tyson R. Smith* argued the cause for petitioner. With him on the briefs was *David A. Repka*.

*Robert M. Rader*, Senior Attorney, U.S. Nuclear Regulatory Commission, argued the cause for respondent. With him on the brief were *Robert Dreher*, Acting Assistant Attorney General, U.S. Department of Justice, *John E. Arbab*, Attorney, *Stephen G. Burns*, General Counsel, U.S. Nuclear Regulatory Commission, and *John F. Cordes Jr.*, Solicitor.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

Rogers, *Circuit Judge*: In 2007 and 2008, the Nuclear Regulatory Commission granted the requests of Honeywell International, Inc. for exemptions from the regulatory requirement that licensees have a tangible net worth at least 10 times the current decommissioning cost estimate of its licensed facility. In each instance, the Commission justified the exemption by considering the value of Honeywell's goodwill, an intangible asset.[1] Yet the Commission denied a third exemption request in 2009 without considering the value of goodwill. Honeywell contends that the Commission's action was arbitrary and capricious for lack of a reasoned explanation. For the following reasons we grant the petition.

**I.**

The Commission's regulations provide that licensees that operate facilities requiring the receipt, possession, use, transfer, or delivery of uranium source and byproduct materials must provide financial assurance for the decommissioning of such facilities. *See* 10 C.F.R. § 40.36(e). Where as here the licensee is a commercial company that issues bonds, it may, in lieu of other methods such as obtaining a surety, *see id.* § 40.36(e)(2), "provide reasonable assurance of the availability of funds for decommissioning based on furnishing its own guarantee that funds will be available for decommissioning costs and on a demonstration that the company passes the financial test of Section II." *Id.* pt. 30, app. C., § I. Section II in turn requires, as relevant, that a company have: (1) "[t]angible net worth at least 10 times the total current decommissioning cost estimate for the total of all facilities . . . for all decommissioning activities for which the company is responsible as self-

---

[1] "Goodwill" refers generally to "the expectancy of continued patronage." *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555-56 (1993) (citation and quotation marks omitted).

guaranteeing licensee"; (2) "assets located in the United States amounting to at least 90 percent of total assets or at least 10 times the total current decommissioning cost estimate"; and (3) "[a] current rating for its most recent bond issuance of AAA, AA, or A as issued by Standard and Poor[']s . . . or . . . Moody[']s." *Id.* pt. 30, app. C., § II.A. The regulations also include a provision for exemptions:

> The Commission may, upon application of any interested person or upon its own initiative, grant such exemptions from the requirements of the regulation in this part as it determines are authorized by law and will not endanger life or property or the common defense and security and are otherwise in the public interest.

*Id.* § 40.14.

Honeywell owns and operates Honeywell Metropolis Works, a facility in Illinois that chemically converts uranium ore concentrates, commonly known as "yellowcake," into uranium hexaflouride ($UF_6$), a material used in nuclear power reactors. It is required to obtain a source materials license from the Commission, *see id.* § 40.3, and, pursuant to 10 C.F.R § 40.36(e), to provide financial assurance that it has resources to decommission its facility. Honeywell last applied in 2005 to renew Source Materials License SUB-526 for ten years, noting that the financial assurance for decommissioning costs had previously been provided by a corporate self-guarantee.

In November 2006, Honeywell, at the Commission's behest, reviewed its compliance with 10 C.F.R. § 40.36(e) and, upon finding certain periods of noncompliance, informed the Commission that it would seek an exemption from the 10:1 tangible net worth to decommissioning cost requirement. On December 1, 2006, Honeywell formally requested a section

40.14 exemption from the 10:1 ratio requirement, seeking permission to include the value of its goodwill, an intangible asset, in the tangible net worth calculation.  Honeywell represented that as of December 31, 2006 it had an "A" bond rating from Standard & Poor's, tangible net worth of $70,000,000, and goodwill valued at $8,403,000,000, a number well in excess of 10 times the $156,440,898 estimated decommissioning cost.  Letter from David J. Anderson, Senior Vice President & Chief Fin. Officer, Honeywell, to Dir., Office of Nuclear Material Safety & Safeguards, NRC (Mar. 30, 2007).

The Commission, by letter of May 11, 2007, granted Honeywell's ten-year license renewal application.  *See* Letter from Gary S. Janosko, Deputy Dir., Fuel Facility Licensing Directorate, Div. of Fuel Cycle Safety & Safeguards, Office of Nuclear Material Safety & Safeguards, NRC, to David Edwards, Plant Manager, Honeywell Metropolis Works, Honeywell (May 11, 2007).  *See generally* 10 C.F.R. § 1.42.  It also granted Honeywell a one-year exemption, commencing May 11, 2007, allowing the use of goodwill in satisfying the 10:1 tangible net worth to decommissioning liability requirement.  License Condition 26 required Honeywell to verify its eligibility for the self-guarantee by submitting for Commission approval the results of the financial test and supporting documentation within 120 days of the close of each fiscal year.  The time-limited exemption was set forth in License Condition 27.

The accompanying technical evaluation report explained that the exemption request was justified on two related grounds.  First, a licensee's ability to pay "under normal circumstances is regularly rated by the bond rating agencies," with "[a] rating of 'A' or higher indicat[ing] a very low probability of default on a company's bonds."  Technical Evaluation Report for the Renewal of Source Materials License SUB-526 for Honeywell Metropolis Works UF6 Conversion Plant, Metropolis, Illinois,

Docket 40-3392, at 53 (May 11, 2007) ("2007 Report"). Even in times of "financial distress," the Commission explained, "a transition from the 'A' rating to a default has not occurred within a one year time span during the period 1983 to 2005 for bonds rated by either Moody's or Standard and Poor's." *Id.* Noting, however, that "[t]he default rate rises as the time span for default extends greater than one year," the Commission stated that "the financial test to qualify for using the self guarantee must be repeated annually, to assure that the risk of default remains low for the next year." *Id.* Second, the Commission explained that a "licensee's ability to pay under conditions of financial distress relates to the ratio of assets to decommissioning liability" and recognized that "if goodwill assets are included in net worth, Honeywell's ratio exceeds 35 to 1." *Id.* The Commission concluded that "[i]n view of the 'A' bond rating and the high ratio of net worth (including goodwill) to decommissioning obligation, the likelihood that assets will be available for decommissioning in the event of financial distress in the next year is adequate." *Id.* The Commission noted, however, that the ongoing evaluation of the self-guarantee regulations might cause reconsideration of the adequacy of using goodwill.[2] *See id.* at 54.

---

[2] On January 22, 2008, the Commission published for comment a proposed rule allowing the use of intangible assets in the net worth calculation, provided the licensee has tangible assets of $19 million. *Nuclear Regulatory Commission Rules for Decommissioning Planning*, 73 Fed. Reg. 3812, 3825, 3831 (Jan. 22, 2008). The Commission has made available to the public on its website a "proposed final rule" increasing the tangible assets prerequisite to $21 million. *See Rulemaking Issue Affirmation* from R.W. Borchardt, Exec. Dir. for Operations, NRC, to the Comm'rs, NRC (Mar. 13, 2009).

Honeywell applied for a second exemption on April 11, 2008, to continue until the earlier of either May 11, 2009 or the effective date of a final rule amending 10 C.F.R. Part 30, Appendix C consistent with the proposed rule published January 22, 2008. When Honeywell's net worth was calculated using goodwill, it met the 10:1 ratio; however, without goodwill its tangible net worth was insufficient to meet the self-guarantee requirement and in fact declined to a negative amount during this period. Honeywell passed the annual self-guarantee financial test for fiscal year 2006 under License Condition 26, in view of License Condition 27, given Honeywell's $9,175,000,000 in goodwill assets at the close of its fiscal year. Letter from Michael D. Tschiltz, Deputy Dir., Div. of Fuel Cycle Safety & Safeguards, Office of Nuclear Material Safety & Safeguards, NRC, to David J. Anderson, Senior Vice President & Chief Fin. Officer, Honeywell (Aug. 22, 2008).

By letter of August 22, 2008, the Commission granted Honeywell's request to extend the exemption for another year, allowing the use of goodwill in satisfying the 10:1 ratio requirement. *See* Letter from Daniel H. Dorman, Dir., Div. of Fuel Cycle Safety & Safeguards, Office of Nuclear Material Safety & Safeguards, NRC, to Mitch Tillman, Plant Manager, Honeywell Metropolis Works, Honeywell (Aug. 22, 2008). The new exemption was approved as Amendment 2 to License Condition 27 of Honeywell's Source Materials License. The Commission found that Honeywell had increased its net income, current assets, and earnings per share, pointing to Honeywell's letter of May 15, 2008, which represented that it maintains $21.9 billion in total assets in the United States. *See* Extension of One-Year Exemption from the Requirements of 10 CFR 30, Appendix C, Regarding Decommissioning Financial Assurance at 2 ("2008 Report"). The Commission also found that after covering an additional $225 million in decommissioning liabilities to other federal and state agencies through guarantees

for an aggregate decommissioning liability of $382 million, the ratio of Honeywell's net worth, with inclusion of goodwill, to decommissioning costs was approximately 21:1 as of March 31, 2008. The Commission noted that Honeywell continued to maintain a long-term credit rating of "A" as assigned by Standard & Poor's. "Because the basis for granting the original exemption still applie[d], the [Commission] consider[ed] that it [wa]s acceptable to allow an extension" as requested. *Id.* at 2-3.

Honeywell applied for a third exemption on April 1, 2009, referencing its March 23, 2009 letter, sent pursuant to License Condition 26, verifying its eligibility for the self-guarantee and noting that its net worth including goodwill continued to exceed its decommissioning costs by a 10:1 ratio. Honeywell estimated that as of December 31, 2008 its decommissioning costs remained $156,440,898 while its net worth decreased to $4,920,000,000 (comprised of negative $5,265,000,000 in tangible net worth and $10,185,000,000 in goodwill). Honeywell passed the annual self-guarantee financial test for fiscal year 2008 under License Condition 26, in view of License Condition 27, given its goodwill assets. Letter from Marissa G. Bailey, Deputy Dir., Special Projects & Technical Support Directorate, Div. of Fuel Cycle Safety & Safeguards, Office of Nuclear Material Safety & Safeguards, NRC, to David J. Anderson, Senior Vice President & Chief Fin. Officer, Honeywell at 2 (Aug. 3, 2009). As of December 31, 2008, Honeywell had assets in the United States of at least 10 times the current decommissioning cost estimate, at least one class of equity securities registered under the Securities and Exchange Act of 1934, 15 U.S.C. § 78a et seq., a current rating for its most recent unsecured bond issuance of "A" as issued by Standard & Poor's, and a tangible net worth at least 10 times the current decommissioning cost estimate. *See id.*

At the Commission's request, on October 13, 2009 Honeywell submitted supplemental information to support the exemption's extension. This information addressed Honeywell's:

(1) maintenance of an "A" bond rating from Standard & Poor's and an A2 rating from Moody's for the past 17 years, noting the default rate was "still less than 0.244%" for A2 Moody's rated bonds at only 3 defaults in the last 25 years, Supplemental Information at 3 (Oct. 13, 2009);

(2) strong financial condition as evidenced by the fact that "[t]o the extent that the recent economic turmoil has led to a historically anomalous number of defaults, the majority . . . were in the banking, finance, insurance, and real estate finance sectors," *id.*, and additionally that "Honeywell is in a stronger financial condition than many of the third parties that it would turn to in the event that it became necessary to obtain a letter of credit," *id.* at 3-4;

(3) "significant annual free cash flow that is available for decommissioning [Honeywell's facility]," noting it had generated $3.1 billion in free cash flow in 2007 and in 2008, and expected in 2009 to generate a minimum of $2.2 billion, *id.* at 4;

(4) more than $22.5 billion in assets in the United States at the end of 2008, more than in 2006 or 2007, *id.*;

(5) explanation of why the tangible net worth test does not accurately reflect the financial stability or low risk of default of a diversified technology and manufacturing company like Honeywell, *see id.* at 4-5; and

(6) view that the third exemption request was consistent with the pending proposed rule, *see id.* at 6-7.

The Commission, by letter of December 11, 2009, denied the third exemption request, stating that "Honeywell's tangible net worth has continued to decline . . . [from] $1.929 billion . . . as of December 31, 2005; $70 million . . . as of December 31, 2006; minus $1.451 billion . . . as of December 31, 2007; and

minus $5.265 billion . . . as of December 31, 2008." Letter from Daniel H. Dorman, Dir., Div. of Fuel Cycle Safety & Safeguards, Office of Nuclear Material Safety & Safeguards, NRC, to Dave Cope, Plant Manager, Honeywell Metropolis Works, Honeywell at 2 (Dec. 11, 2009) ("2009 Letter"). The Commission also rejected Honeywell's position that the exemption request was consistent with the proposed rule, *see supra* note 2, stating that the originally proposed rule required a tangible net worth of $19 million before intangible assets such as goodwill may be used to calculate the 10:1 tangible net worth to decommissioning cost ratio, and that the amount had been increased to $21 million to account for inflation. *See* 2009 Letter at 2-3. The Commission directed Honeywell to provide one or more alternate forms of financial security within 120 days; Honeywell's self-guarantee would remain in force until the Commission approved an alternate security. *Id.* at 3. Honeywell petitions for review.

## II.

We first address two threshold issues regarding this court's jurisdiction.

## A.

The Administrative Orders Review Act, known as the Hobbs Act, 28 U.S.C. § 2342(4), provides as relevant that the court of appeals "has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Atomic Energy Commission," now the Nuclear Regulatory Commission, "made reviewable by section 2239 of title 42." Section 2239, in turn, makes reviewable "[a]ny final order entered in any proceeding of the kind specified in subsection (a) of this section," 42 U.S.C. § 2239(b), which includes proceedings "for the granting, suspending, revoking, or amending of any license," *id.* § 2239(a)(1)(A).

In *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), the Supreme Court clarified a "vexing semantic conjunction" due to subsection 2239(a)'s reference both to the scope of Commission licensing proceedings and to the hearing requirement for such proceedings, holding that "Congress intended to provide for initial court of appeals review of all final orders in licensing proceedings whether or not a hearing before the Commission occurred or could have occurred." *Id.* at 736-37. The Court explained that "[a]bsent a firm indication that Congress intended to locate initial [Administrative Procedure Act ("APA")] review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals." *Id.* at 745.

Until recently courts of appeals found jurisdiction to review the Commission's exemption decisions under the Hobbs Act, as interpreted in *Lorian*. *See, e.g., Shoreham-Wading River Cent. Sch. Dist. v. NRC*, 931 F.2d 102 (D.C. Cir. 1991); *Massachusetts v. NRC*, 878 F.2d 1516 (1st Cir. 1989). The Second Circuit in *Brodsky v. NRC*, 578 F.3d 175, 182 (2d Cir. 2009), distinguished *Lorian*, however, holding that it lacked jurisdiction under the Hobbs Act to consider the Commission's fire safety regulation exemption at a nuclear power plant. Observing that its jurisdiction was limited to an appeal of an order "issued in a proceeding . . . for the granting, suspending, revoking, or amending of any license," *id.* at 180 (ellipsis in original) (citations and internal quotation marks omitted), the court focused on the fact that the Commission had not treated the exemption as an amendment to the license of the nuclear power plant, *see id.* at 182-83. Deferring to the Commission's characterization of its exemption, the court concluded its Hobbs Act jurisdiction did not reach that far.

11

*Lorian* controls here. The Commission has treated Honeywell's exemptions from the 10:1 tangible net worth to decommissioning cost requirement under 10 C.F.R. § 40.36(e) and 10 C.F.R. Part 30, Appendix C, Section II, as an amendment to its Source Materials License, bringing Honeywell's petition for review within the ambit of the Hobbs Act, 28 U.S.C. § 2342(4) (cross-referencing 42 U.S.C. § 2239). The first exemption was granted as part of a license renewal proceeding and memorialized as License Condition 27 to Honeywell's Source Materials License; the second exemption was granted as an amendment to License Condition 27. Therefore, because the Commission's letter of December 11, 2009 denying Honeywell's exemption request is a "final order" marking the consummation of the decision-making process that determines rights and obligations, *see Natural Res. Def. Council, Inc. v. NRC*, 680 F.2d 810, 815 (D.C. Cir. 1982), this court has jurisdiction over Honeywell's petition challenging the denial of an extension of the exemption memorialized in License Condition 27 to its Source Materials License.

**B.**

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation and quotation marks omitted). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). The court has held in numerous instances that a case is moot because a period or deadline has passed. *See, e.g., S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005); *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference*, 264 F.3d 52, 55 (D.C. Cir. 2001). The initial "heavy burden" of establishing

mootness lies with the party asserting a case is moot, *see Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998), but the opposing party bears the burden of showing an exception applies, *see S. Co. Servs.*, 416 F.3d at 43.

Contrary to the Commission's contention, this case is not moot. The Commission maintains that the court can grant no relief that would affect the parties' rights with regard to Honeywell's exemption request for the May 2009-May 2010 period. Responding, Honeywell persuasively maintains that its challenge falls within the exception to mootness for issues that are "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911); *see Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010); *Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*, 972 F.2d 365, 369 (D.C. Cir. 1992).

The "capable of repetition, yet evading review" exception to mootness has two requirements: (1) the challenged action must be too short to be fully litigated prior to cessation or expiration; and (2) there must be a "reasonable expectation that the same complaining party [will] be subject to the same action again." *S. Co. Servs.*, 416 F.3d at 43 (alteration in original) (citation and quotation marks omitted); *see Christian Knights*, 972 F.2d at 369-71. It is undisputed that Honeywell meets the first requirement, for a presumption applies that "orders of less than two years' duration ordinarily evade review." *S. Co. Servs.*, 416 F.3d at 43 (citation and quotation marks omitted). The license amendment formulated by the Commission requires Honeywell to reapply for the exemption on an annual basis. Moreover, as Honeywell points out, the Commission denied Honeywell's exemption for the May 2009-May 2010 period on December 11, 2009, eight months after Honeywell's application and only five months before the exemption would have expired had it been granted.

13

Honeywell also meets the second requirement. It holds a license from the Commission that does not expire until 2015. It has sought a license amendment allowing goodwill, an intangible asset, to be considered in satisfying the 10:1 tangible net worth to decommissioning cost requirement on three occasions since its license was renewed, and it timely petitioned for review of the Commission decision denying the 2009 exemption request. It also advised the Commission that the alternative to serving as a self-guaranteeing licensee is costly: it estimated the cost of a letter of credit covering the decommissioning costs would be between $550,000 to $750,000 annually in 2007 (and up to $7 million over a 10-year license term), and $1.5 to $2 million annually in 2009 (and up to $20 million over a 10-year license term). In its brief to this court Honeywell states that as a result of the Commission's action it has executed a costly surety bond to meet the requirements of 40 C.F.R. § 40.36(e). *See* Pet'r's Br. 15. Honeywell's historical preference for the self-guarantee method and its three exemption requests to use goodwill in satisfying the tangible net worth requirement are consistent with the Commission's stated purpose in establishing this method: "to 'reduce the licensee's cost burden' in annual fees for letters of credit, surety bonds, and other forms of third-party financial assurance, but 'without causing adverse effects on public health and safety.'" Resp't's Br. 10 (quoting *Self-Guarantee as an Additional Financial Assurance Mechanism*, 58 Fed. Reg. 68,726, 68,727 (Dec. 29, 1993)). Under the circumstances we conclude that there is a reasonable expectation that Honeywell, as a regulated party subject to the Commission's licensing requirements, will in the future seek Commission approval to act as a self-guaranteeing licensee by means of an exemption from the 10:1 tangible net worth to decommissioning cost requirement. *See Washington v. Harper*, 494 U.S. 210, 219 (1990).

14

The Commission points to the fact that Honeywell did not apply for an exemption for the May 2010-May 2011 period in maintaining that there are no "future relations" to be affected by judicial resolution of this appeal. In the Commission's view, Honeywell has "chose[n] to abandon the undertakings that gave rise to the controversy." *Entergy Servs., Inc. v. FERC*, 391 F.3d 1240, 1246 (D.C. Cir. 2004). But the test is not whether there is in fact a "future relation" that will be affected, but rather whether "resolution of an otherwise moot case . . . h[as] a *reasonable chance* of affecting the parties' future relations." *Newdow*, 603 F.3d at 1008 (emphasis added) (citation and internal quotation marks omitted). As Honeywell responds, the record indicates that another exemption request would be pointless until the Commission adequately explains the reasons for rejecting Honeywell's third request. Although the Commission's determination whether to grant an exemption will turn on specific facts regarding Honeywell's financial net worth at the relevant time, the likelihood that Honeywell will again seek to use the value of goodwill intangible assets in satisfying the 10:1 tangible net worth to decommissioning cost requirement do not cause the court "to imagine a sequence of coincidences too long to credit." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005); *see also Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 633-34 (D.C. Cir. 2002). Unlike in *Entergy*, where the petitioners abandoned their judicial challenge altogether, *see* 391 F.3d at 1245-46, Honeywell continues to challenge the Commission's denial of its exemption request and its choice not to file a subsequent exemption request neither forecloses such action in the future nor evidences an intention to abandon its challenge.

Likewise the Commission's reliance on cases holding the second requirement is not met when the application of a regulatory requirement varies from one period to the next and

the factual record changes is misplaced. For example, in *National Association of Home Builders v. U.S. Army Corps of Engineers*, 264 F. App'x 10, 13 (D.C. Cir. 2008) (per curiam), cited by the Commission, the court concluded the agency's issuance of time-limited permits was not "capable of repetition" because the permit regulations had changed. Here, by contrast, the Commission's proposed rulemaking has been pending for a number of years. *See supra* note 2. It would be imprudent to dismiss Honeywell's petition as moot when the challenged denial was based on regulations that continue in effect and the content and timing of the Commission's final rule are uncertain.

Finally, the Commission's suggestion that Honeywell can "easily neutralize any future, adverse decision" by Commission staff by seeking a hearing before the Atomic Safety and Licensing Board and subsequent review before the Commission, Resp't's Br. 32 (citing 10 C.F.R. §§ 2.340(a), 2.341), does not address whether there is a reasonable likelihood that Honeywell will in the future apply for an exemption allowing consideration of the value of goodwill in satisfying the 10:1 tangible net worth to decommissioning cost requirement.

## III.

Honeywell contends that in denying its 2009 request for an exemption under 10 C.F.R. § 40.14 the Commission was arbitrary and capricious because it failed to provide a reasoned decision for changing its policy of considering the value of goodwill, an intangible asset, as it had in granting prior exemptions. Specifically, Honeywell contends that the Commission's December 11, 2009 decision, without explanation, changed the criteria it applies in interpreting section 40.14, applied the new criteria inconsistently, and ignored information in the record that is contrary to its conclusions. As for the Commission's statement about the continuing decline in

Honeywell's tangible net worth, Honeywell maintains that "this does not explain why the [Commission] drastically departed from its prior decision to allow intangible assets to be used for determining capital adequacy, nor . . . how the relationship between tangible and intangible assets affects a licensee's ability to use self-guarantee to provide decommissioning financial assurance." Pet'r's Br. 26.

The scope of our review under the APA is narrow, *see Reytblatt v. NRC*, 105 F.3d 715, 722 (D.C. Cir. 1997), and the court generally accords the Commission's licensing decisions "the highest judicial deference" in view of Congress' delegation of broad authority to the Commission under the Atomic Energy Act, *Massachusetts v. NRC*, 924 F.2d 311, 324 (D.C. Cir. 1991). We have no occasion to doubt such deference is similarly due where, in denying an exemption under a license condition, the Commission is enforcing regulations pertaining to ensuring licensees provide a financial guarantee for the decommissioning of their facilities, *see* 10 C.F.R. § 40.36, a statutory mandate, *see* 42 U.S.C. §§ 2201(*i*)(4) and (x), 2243(d)(2). Honeywell's petition is thus distinguishable from cases in which deference is withheld because the agency is interpreting a statute "outside [its] particular expertise and special charge to administer." *Prof'l Reactor Operator Soc. v. NRC*, 939 F.2d 1047, 1051 (D.C. Cir. 1991). Moreover, the court has declined "to micromanage the [Commission's] licensure proceeding, or to second-guess its acceptance of reasonable cost estimates." *Nuclear Info. & Res. Serv. v. NRC*, 509 F.3d 562, 570 (D.C. Cir. 2007).

Honeywell's challenge to the Commission's denial of its exemption request is based on the legal constraint that an agency "may change its policy only if it provides 'a reasoned analysis indicating that prior policies and standards are deliberately changed, not casually ignored." *Mich. Pub. Power Agency v.*

*FERC*, 405 F.3d 8, 12 (D.C. Cir. 2005) (quoting *Greater Boston Television Corp. v. FCC*, 444 F.3d 841, 852 (D.C. Cir. 1970)). "As a general matter," the court explained in *Hatch v. FERC*, 654 F.2d 825, 834 (D.C. Cir. 1981), "an agency is free to alter its past rulings and practices even in an adjudicatory setting . . . . However, it is equally settled that an agency must provide a reasoned explanation for any failure to adhere to its own precedents."

It is true, as the Commission points out, that Honeywell falls short of showing that the Commission's 2009 denial of its exemption request runs afoul of *Alaska Professional Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030 (D.C. Cir. 1999). In that case, the court set aside an agency announcement changing a policy to which it had adhered for more than 30 years exempting Alaskan guide pilots from its regulations on commercial pilots. The court held that "[w]hen an agency has given its regulation a definitive interpretation, and later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish without notice and comment." *Id.* at 1034.

In granting the 2007 and 2008 exemption requests, the Commission did not give the exemption provision, 10 C.F.R. § 40.14, a "definitive," *Alaska Prof'l Hunters*, 177 F.3d at 1034, or "express, direct, and uniform interpretation," *Ass'n of Am. Railroads v. Dep't of Transp.*, 198 F.3d 944, 949 (D.C. Cir. 1999). The court has repeatedly held that "conditional or qualified statements, including statements that something 'may be' permitted, do not establish definitive and authoritative interpretations." *MetWest Inc. v. Sec'y of Labor*, 560 F.3d 506, 509-10 (D.C. Cir. 2009) (citations omitted). In the technical evaluation report accompanying its 2007 letter, the Commission stated that the exemption "must be time limited to allow reconsideration of the basis for the exemption in the future"

given the ongoing re-examination of the self-guarantee regulations. 2007 Report at 54. Likewise in 2008, the Commission granted the exemption for only one year or until the proposed rule was promulgated as a final rule, whichever came first. These statements qualify the Commission's action, rather than establish a definitive policy that could be changed only by notice and comment rulemaking. *See Ass'n of Am. Railroads*, 198 F.3d at 949.

Moreover, "[a] fundamental rationale of *Alaska Professional Hunters* was the affected parties' substantial and justifiable reliance on a well-established agency interpretation." *MetWest*, 560 F.3d at 511. "People in the lower 48 states had pulled up stakes and moved to Alaska," *id.*, and "Alaskan guide pilots and lodge operators relied on the advice FAA officials imparted to them — they opened lodges and built up businesses dependent on aircraft, believing their flights were subject to [general instructions regarding aircraft operation] only," *Alaska Prof'l Hunters*, 177 F.3d at 1035. Even if the Commission's approval letters in 2007 and 2008 had provided a definitive regulatory interpretation, Honeywell could not reasonably have based its long-term conversion contracts in part on the annual extension of the exemption. The Commission's approvals, and the accompanying reports, gave fair warning that the appropriateness of the time-limited exemption would be reevaluated each year. Indeed, in granting the original one-year exemption resulting in License Condition 27, the Commission advised Honeywell that the exemption "will expire" and that Honeywell's options upon expiration would be to re-apply for an exemption, comply with the self-guarantee financial test without including the value of its goodwill, or have an alternative surety in place. *See* 2007 Report at 54.

Instead, the problem arises for the Commission because its 2009 decision is inconsistent with its 2007 and 2008 decisions

granting Honeywell's exemption requests. The Commission's 2007 grant of the initial exemption following relicensing was based on (1) Honeywell's "A" bond rating, which served as a "reliable indicator" that Honeywell had the ability to pay its decommissioning costs under normal circumstances and further indicated that Honeywell was unlikely to face default or financial distress within a year, and (2) the fact that Honeywell's net worth to decommissioning cost ratio exceeded 35:1 when goodwill was considered. Thus, the Commission found that "[i]n view of the 'A' bond rating and the high ratio of net worth (including goodwill) to decommissioning obligation, the likelihood that assets will be available for decommissioning in the event of financial distress in the next year is adequate." *Id.* at 53. The Commission relied on this same rationale in granting the exemption in 2008: "Honeywell's net worth to decommissioning liability is approximately 21 to 1 [if goodwill is included]. . . . Additionally, Honeywell has continued to maintain a long-term credit rating of 'A' . . . . Because the basis for granting the original exemption still applies, the [Commission] considers that it is acceptable to allow an extension of this exemption . . . ." 2008 Report at 2-3. Although in 2009 Honeywell continued to maintain an "A" bond rating and its net worth to decommissioning liability ratio continued to exceed 10:1, the Commission denied the exemption request because Honeywell's tangible net worth had declined over a four-year period.

The Commission's decision is inconsistent with its precedent addressing Honeywell's exemption requests and its explanation for its denial in the December 11, 2009 letter is inadequate. If the Commission in 2009 had applied the same criteria identified in 2007 and 2008 in granting the exemption, then, Honeywell maintains, it should have granted the exemption again because Honeywell maintained an "A" bond rating and reported a net worth, inclusive of goodwill, that

exceeded its decommissioning liability by more than a 10:1 ratio. Contrary to the Commission's suggestion, this is not a case in which the court should "permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted precedent are so plain that no inconsistency appears." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (citation and quotation marks omitted). The Commission's December 11, 2009 letter did not address the substance of supplemental information Honeywell submitted on October 13, 2009 at the Commission's request regarding Honeywell's financial health and stability and data of default rates by credit sources during "recent economic turmoil that has led to a historically anomalous number of defaults," Supplemental Information at 3. Nor did the Commission's mere recital of its 2007 and 2008 rulings in the December 11, 2009 letter demonstrate that the Commission was "by inference clearly reevaluating what it has previously looked at" in granting Honeywell's exemption requests, as Commission counsel suggested at oral argument. Oral Arg. 15:42-16:11. While the Commission might reasonably have concluded that a decline in tangible net worth over a given period is not rectified by a high goodwill value, or by other potential indicators of a company's financial health and stability, the Commission's decision leaves too much to inference. *See Hatch*, 654 F.2d at 834. Most notably, how far must the tangible net worth decline and over what period before goodwill will not be considered adequate? How does a decline in tangible net worth affect the reliability of the "A" bond rating and other assets previously considered, and the high ratio of net worth to decommissioning liability when goodwill is included? Without the Commission's explanation, "we are left with no guideposts for determining the consistency of administrative action in similar cases, or for accurately predicting future action by the Commission." *Id.* at 834-35.

On the record before the court, the fact that Honeywell's tangible net worth declined does not necessarily provide a reasonable basis to distinguish the 2009 decision because, as the Commission charts in its denial letter, Honeywell's tangible net worth was declining when it granted the 2007 and 2008 exemptions. Nor can the fact that Honeywell had a negative tangible net worth in 2009 serve as the apparent basis for the denial because its 2008 tangible net worth was also negative. Nor can the fact that the proposed rule would require a licensee to have $19 million in tangible net worth before allowing consideration of goodwill; the proposed rule was published before the Commission granted Honeywell's second exemption in 2008, *see supra* note 2, and the governing regulations have remained unchanged since Honeywell received its exemption in 2007 upon renewal of its Source Materials License. The Commission's attempt through *post hoc* arguments of counsel to explain its decision in its response brief comes too late. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

Accordingly, we grant the petition, vacate the Commission's December 11, 2009 denial, and remand Honeywell's April 11, 2009 exemption request to the Commission for further proceedings.